UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUKHJOT SINGH SEKHON,<br><br>Petitioner,<br><br>v.<br><br>WARDEN OF THE GOLDEN STATE ANNEX DETENTION FACILITY, *et al.*,<br><br>Respondents. | Case No.  1:25-cv-1692-JDP<br><br>ORDER |

Sukhjot Singh Sekhon, an asylum applicant who has lived in the United States for the last year, was arrested and re-detained by ICE.  Petitioner seeks immediate release, arguing that his re-detention without a hearing violates the Fifth Amendment.  He seeks a writ of habeas corpus under 28 U.S.C. § 2241.  For the reasons outlined below, the court grants the petition for a writ of habeas corpus and orders that petitioner be immediately released.

**Background**

Petitioner, a citizen of India, entered the United States in May 2024 after crossing through the Mexican border.  ECF No. 12-1 ¶ 2.  He came to the United States fleeing persecution in India for his political opinions and Sikh/Punjabi ethnicity.  *Id.*  Federal agents detained petitioner at the border, and the Department of Homeland Security ("DHS") released him with a Notice to Appear.  *Id.*

1

On June 23, 2024, after retaining an immigration attorney, petitioner applied for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *Id.* ¶ 3. On May 20, 2025, petitioner and his attorney appeared in immigration court for a hearing on his asylum application. *Id.* The government moved to dismiss his application, and the immigration judge granted dismissal. *Id.* Petitioner has appealed the decision, which remains pending with the Board of Immigration Appeals. ECF No. 12 at 7. Moments after petitioner left the courtroom, DHS officials arrested petitioner. ECF No. 12-1 ¶ 3. Petitioner has been detained since May 20, 2025. *Id.* ¶ 4.

After entering the United States, petitioner has lived in Fresno, California. *Id.* ¶ 3. Petitioner has never been arrested in the United States, and DHS granted him employment authorization. *Id.* Petitioner has complied with the all the requirements imposed by his immigration case. *Id.* He attests that officers at the detention facility refuse to provide him with vegetarian meals, despite his religious requirements, the bathrooms are dirty, poor hygiene is commonplace, and he has not been outside or seen sunlight in a month. *Id.* ¶ 4.

**Procedural History**

On December 1, 2025, petitioner, initially proceeding pro se, filed a petition for habeas corpus, ECF No. 1. A day later, the court appointed counsel for petitioner. ECF No. 5. Petitioner and the government thereafter filed a stipulated briefing schedule to "resolve the merits of the habeas petition." ECF No. 11. As outlined upon in the stipulation, petitioner filed an amended petition on December 16, 2025, ECF No. 12, the government filed its response to the habeas petition on December 19, 2025,[1] ECF No. 17, and petitioner filed his reply on December 21, 2025, ECF No. 19. All parties consented to magistrate judge jurisdiction, and the matter was reassigned to the undersigned on December 23, 2025. ECF No. 20.

---

[1] The caption in the government's response states that the filing is a motion to dismiss, but court construes the government's filing as a response to the habeas petition in light of the arguments therein raised and the stipulated briefing schedule.

**Legal Standard**

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law. *See* 28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75 (2000). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

**Analysis**

Petitioner argues that respondents violated his Fifth Amendment Due Process rights by re-detaining him without notice and a hearing.[2] ECF No. 12. Instead of responding to petitioner's due process-based argument, respondents advance an argument premised on an assertion that petitioner is an "applicant for admission" within the meaning of 8 U.S.C. § 1225(a) and was re-detained under 8 U.S.C. § 1225(b)(2)(A). ECF No. 17 at 2. For support, respondents rely on (1) a handful of district court decisions denying relief for similarly situated petitioners, and (2) the Board of Immigration Appeals decision *In re Matter of Yajure Hurtado*, 29 I & N Dec. 216 (BIA 2025). *Id.* However, the government fails to address how its statutory argument responds to the constitution-based argument raised by petitioner. Petitioner's argument is, thus, essentially un-opposed.

Courts analyze procedural due process claims in two steps: first, we consider whether there exists a protected liberty interest under the Due Process Clause, and, second, we evaluate what procedures are necessary to ensure that any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454,

---

[2] Petitioner also advances a substantive due process claim, but for the reasons discussed in the analysis, the court finds it unnecessary to reach that argument.

3

460 (1989).  The court considers each in turn.

To determine whether a specific conditional release rises to the level of a protected liberty interest, courts have compared "specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey* [*v. Brewer*, 408 U.S. 471 (1971)]." *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).  In *Morrissey*, the Supreme Court explained that parole from a criminal conviction "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482.  The court observed that while "the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring and seeking authorization to work and travel, the petitioner's "condition is very different from that of confinement in a prison." *Id.* "The parolee has relied on at least an implicit promise that parole will be revoked only if [he] fails to live up to the parole conditions." *Id.* The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." *Id.* (quotations omitted).  Therefore, in *Morrissey*, the Supreme Court found that a parolee in a criminal case possessed a protected interest in "continued liberty." *Id.* at 481-84.

Recently, confronted with questions similar to those raised by petitioner, courts in this Circuit have found that non-citizens released from ICE custody acquire a liberty interest in their continued release. *See, e.g.*, *Lopez v. Lyons*, No. 2:25-cv-3174-DJC-CKD, 2025 WL 3124116, at *3 (E.D. Cal. Nov. 7, 2025); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025). "Even where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause." *Rico-Tapia v. Smith*, No. 1:25-cv-00379-SASPKJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) and *Morrissey v. Brewer*, 408 U.S. 471, 481-82 (1972)); *Valencia Zapata*, 2025 WL 2741654, *6; *Shoimov v. Chestnut*, No. 1:25-cv-1603 CSK, 2026 WL 35624, at *5 (E.D. Cal. Jan. 6, 2026).  This court agrees with the bulk of other courts to have considered the issues presented here and holds that petitioner has a liberty interest in his continued release.

Immigration officials released petitioner on his own recognizance in May 2024. ECF No. 12 ¶ 2. He has been allowed to live in the United States, subject to ICE supervision, but outside of custody, for over a year. During that time, petitioner has formed "enduring attachments of normal life" while living in the United States. *See Morrissey*, 408 U.S. at 482. The court finds that petitioner's initial release and time out of custody created a constitutionally protected liberty interest in continued release. *See Guillermo M. R. v. Kaiser*, No. 25-cv-5436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-5259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding released non-citizens to have strong liberty interests).

Once a court has found that a non-citizen has a liberty interest in continued release, the court must next determine what procedural protections the government must afford the non-citizen before depriving him of that liberty interest. This requires balancing the factors laid out in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *See Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context).

The *Mathews* test requires courts to consider:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

Here, petitioner has a significant private interest in his continued release. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Petitioner had been released in the United States under the supervision of ICE for over a year prior to his re-detention. During that time, he applied for asylum and appealed his asylum application's denial, and he has been granted employment authorization. ECF No. 12-1 ¶ 3. *See Salazar v. Casey*, No. 25-cv-2784-JLS (VET), 2025 WL 3063629, at *4 ("Petitioner has

5

an interest in remaining with her family, seeking counseling, and attending hearings to seek a visa."); *Noori v. LaRose*, No. 25-cv-1824-GPC-MSB, 2025 WL 2800149, at *10 (S.D. Cal. Oct. 1, 2025) ("Petitioner has a private interest in remaining free, which developed over the year he resided in the United States.").

Turning to the second *Mathews* factor, the risk of erroneous deprivation is high. Petitioner was released on his own recognizance after his initial detention at the border. Prior to releasing petitioner, immigration officers necessarily determined that he was neither a flight risk nor danger to the community. *See Pinchi*, 792 F. Supp. 3d at 1034 (explaining that a petitioner's "release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community"). And in the intervening year, there has been no indication that he has become a flight risk or danger to the community. *See Salazar*, 2025 WL 3063629, at *4 (noting that there was no evidence that the petitioner presented a danger to the community or a flight risk). Absent a pre-detention hearing in front of a neutral arbiter, the risk of erroneous deprivation is high given the possibility that petitioner's re-detention will not be pursuant to a valid state interest. *See Omer G.G.*, 2025 WL 3254999, at *7 ("Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community.") (quoting *Zadvydas*, 533 U.S. at 690)).

Respondents do not argue that petitioner is now a danger to public safety or a flight risk; they provide no explanation for his re-detention. *See* ECF No. 17. "Where, as here, '[the petitioner] has not received any bond or custody . . . hearing,' 'the risk of an erroneous deprivation [of liberty] is high' because neither the government nor [the petitioner] has had an opportunity to determine whether there is any valid basis for her detention." *Pinchi*, 792 F. Supp. 3d at 1035 (quoting *Singh v. Andrews*, No. 1:25-cv-00801, 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025)). Respondents offer no evidence or argument indicating that any procedural safeguards were employed prior to petitioner's re-arrest; more generally, they give the court no reason to believe that any efforts were made to prevent erroneous deprivation of petitioner's liberty. *See id.*

"Third, the Government's interest in detaining Petitioner without notice, reasoning, and a hearing is 'low.'" *Salazar*, 2025 WL 3063629, at *5. Indeed, respondents have provided no information about the additional burden that would fall on them as a result of being required to provide additional procedural safeguards.

On balance, an initial weighing of the *Mathews* factors demonstrate that petitioner is entitled to notice and an opportunity to be heard before re-detention. Accordingly, petitioner has demonstrated that respondents violated his Fifth Amendment Due Process rights.

**Conclusion**

Based on the foregoing, the court grants the petitioner's writ of habeas corpus. If respondents seek to re-detain petitioner, they must first provide him with written notice and a hearing before a neutral adjudicator. At any such hearing, the government shall bear the burden of establishing, by clear and convincing evidence, that petitioner poses a danger to the community or a risk of flight, and petitioner shall be allowed to have his counsel present.

Accordingly, it is hereby ORDERED that:

1. The petition for writ of habeas corpus, ECF No. 12, is GRANTED.

2. Respondents are ordered to immediately release petitioner from their custody under conditions no stricter than those to which he was subject to prior to his May 20, 2025 detention.

3. Respondents are enjoined and restrained from re-detaining petitioner, absent exigent circumstances, without first providing petitioner with written notice and a pre-detention hearing before a neutral adjudicator. At any such hearing, the government shall bear the burden of establishing, by clear and convincing evidence, that petitioner poses a danger to the community or a risk of flight, and petitioner shall be allowed to have his counsel present.

4. Within seven days of the date of this order, the parties shall file a joint status report addressing petitioner's status.

IT IS SO ORDERED.

Dated:    January 9, 2026

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE